**Affirmed and Memorandum Opinion filed February 7, 2012**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-11-00153-CR

---

**VAUGHN TERRELL KING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1272035**

---

## MEMORANDUM OPINION

Appellant Vaughn Terrell King appeals the trial court's denial of his motion to suppress. After King's motion was denied, he pleaded guilty to felony possession of cocaine and, with an agreed recommendation from the State, was sentenced to seventeen years' confinement in the Institutional Division of the Texas Department of Criminal

Justice. In a single issue, King contends the trial court abused its discretion in denying his motion to suppress. Finding no abuse of discretion, we affirm.

I

At the hearing on King's motion to suppress, the State presented Deputy Ronnie Morrison of the Harris County Sheriff's Department. Morrison testified that around 12:20 a.m. on July 27, 2010, he was patrolling in an area of west Houston he knew from past experience to be a narcotics hotspot. There were no pedestrians in the area and little to no traffic, and Morrison noticed two silhouettes moving inside a gray Cadillac that had been backed into a driveway. Its engine and headlights were both off. Morrison immediately suspected illegal activity and illuminated the parked car with his patrol car's spotlight, revealing two men inside: King was sitting in the passenger seat, and his cousin, Kevin Biggurs, was in the driver's seat. Morrison testified that, upon seeing the spotlight, King immediately leaned forward in his seat and reached behind his body—a motion Morrison has come to recognize as an attempt to either conceal contraband or grab a weapon.

Morrison parked his patrol car in front of the driveway but off center so that the vehicle could have gone around his patrol car. With the spotlight still on, he approached the passenger side of the Cadillac, holding a flashlight in his left hand and touching his pistol with his right hand. When he was about ten feet away, King opened his door. Morrison noticed "a haze of smoke" escaping through the open door, and he immediately smelled marijuana. King appeared nervous, and Morrison was concerned that he might take off running. Morrison informed King he was going to pat him down out of safety concerns, and King cooperated. During the pat-down, Morrison "felt a rock, chunky-like substance protruding from the back portion of his pants." Based on his previous experience and the movements made by King when the spotlight was turned on, Morrison immediately thought the substance was crack cocaine. Without mentioning the suspicious substance, Morrison handcuffed King and placed him in the back of the patrol car while he patted down Biggurs. After a short time, Morrison returned to King and asked him to hand over "the dope that was on him." King opened his mouth to reveal a small bag of

2

marijuana, and he told Morrison he did not have any other contraband on him. When Morrison confronted King about the suspicious substance in his pants, King denied he was hiding anything there. Morrison placed King against the patrol car and retrieved a bag containing 13 grams of crack cocaine by "working [it] up from his pants to the top of his pants."

After hearing King's motion to suppress, the trial court denied the motion and found that Morrison's interaction with King began as a casual encounter and did not transform to an investigatory detention by Morrison's use of his spotlight. It recognized the surrounding facts—the Cadillac's position, the time of night, and the surrounding darkness—and found Morrison's use of the spotlight to be necessary for officer safety. The trial court also noted that, once Morrison noticed the odor of marijuana, he had probable cause to arrest King. After the trial court's ruling, King pled guilty and appealed the denial of his motion to suppress.

II

We review the trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Thomas v. State*, 297 S.W.3d 458, 460 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We give almost total deference to the trial court's determination of historical facts but review de novo the trial court's application of the law to those facts. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim. App. 2000), *modified on other grounds*, *State v. Cullen,* 195 S.W.3d 696 (Tex. Crim. App. 2006); *Thomas,* 297 S.W.3d at 460. When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence supports these implied fact findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Ross*, 32 S.W.3d at 855. Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Garcia-Cantu*, 253 S.W.3d at 241. But the question of whether a given set of historical

3

facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is subject to a de novo review because that is an issue of law. *Id.*

There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). A detention implicates the Fourth Amendment's search and seizure restrictions and requires articulable suspicion to support a temporary seizure, while an encounter is not subject to any Fourth Amendment requirements or restrictions. *Garcia-Cantu*, 253 S.W.3d at 238. A police officer is just as free as anyone to stop and question a fellow citizen. *Woodard*, 341 S.W.3d at 411; *Castleberry*, 332 S.W.3d at 466. An officer may, without reasonable suspicion, request identification and information from a citizen. *Woodard*, 341 S.W.3d at 411. Even if the officer did not tell the citizen that the request for identification or information may be ignored, the fact that the citizen complied with the request does not negate the consensual nature of the encounter. *Id.*

Although no bright-line rule governs when a consensual encounter becomes a seizure, generally when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual. *Woodard*, 341 S.W.3d at 411; *Johnson v. State*, 14-10-01089-CR, 2011 WL 6176184 at *4, ___ S.W.3d ___ (Tex. App.—Houston [14th Dist.] Dec. 13, 2011, no pet. h.). A Fourth Amendment seizure occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. *Garcia-Cantu*, 253 S.W.3d at 242; *see also Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) (holding that a Fourth Amendment seizure occurs when there is governmental termination of freedom of movement through means intentionally applied). If, on the other hand, such person has an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred. *Woodard*, 341 S.W.3d at 411. The surrounding circumstances, including time and place, are taken into account, but the officer's conduct

is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure. *Id.*

III

In his sole issue, King contends that the trial court erred by concluding the initial interaction between Deputy Morrison and King was a casual encounter. He argues that "the combination of the spotlight, the deputy pulling his patrol car across the street, and his blocking the entrance to the driveway constituted a show of authority" that transformed the encounter into an improper investigatory detention—improper because Morrison did not have the requisite reasonable suspicion. We disagree.

The Court of Criminal Appeals has made it clear that the use of a police spotlight, alone, is not enough to transform a casual encounter into an investigatory detention. *Crain v. State*, 315 S.W.3d 43, 50–51 (Tex. Crim. App. 2010); *see also Stewart v. State*, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980). Here, Deputy Morrison's use of the spotlight was the only action he took before he noticed King leaning forward and reaching back—a motion Morrison recognized as an attempt to either hide contraband or grab a weapon. Only then did Morrison park his patrol car and approach the Cadillac. He continued shining the flash light with his left hand and had his right hand on his gun. Then, Morrison began to exit the vehicle and Deputy Morrison saw and smelled marijuana smoke.

At that point, the totality of the circumstances gave rise to Morrison's reasonable suspicion: The high-crime area, late hour, backed-in position of the Cadillac, and King's furtive movements—all combined—were certainly enough to support an investigatory detention, though we hesitate to rule that Morrison's actions to that point constituted such a detention. Fortunately, we need not rule either way on that issue because Morrison's actions were appropriate regardless of whether they constituted an investigatory detention.

5

We reject King's argument that Deputy Morrison needed a reasonable suspicion of criminal activity before he used his spotlight to illuminate the Cadillac. To adopt such a position would be to severely handicap law enforcement during nighttime hours—the time when crime is especially likely to occur. *See, e.g., Amorella v. State*, 554 S.W.2d 700, 701 (Tex. Crim. App. 1977) (using the late hour as a factor in determining whether law enforcement officer had reasonable suspicion). Thus, the trial court's characterization of Morrison's initial approach as part of a casual encounter is correct, and we find no abuse of discretion.

\* \* \*

For the foregoing reasons, we affirm.


/s/    Jeffrey V. Brown
Justice


Panel consists of Justices Brown, Boyce, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).